**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**at PIKEVILLE**

**CIVIL ACTION NO. 06-98-DLB**

**ALICIA SCOTT**                                                                                         **PLAINTIFF**

**vs.**                         **<u>MEMORANDUM OPINION & ORDER</u>**

**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                 **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 43 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.[1] The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Alicia Scott filed an application for Supplemental Security Income (SSI) payments on June 12, 2003. Her application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on March 16, 2005, in Prestonsburg, Kentucky.

At the time of the hearing, Plaintiff was 44 years old, with a tenth grade limited education and no past relevant work experience. She alleges disability beginning June 6,

---

[1] Although Jo Anne Barnhart was the Commissioner of the Social Security Administration when the Complaint was filed, she has been replaced by Michael J. Astrue.

2003, due to back and joint problems, poor vision, chronic bronchitis, digestive problems, anxiety, depression, memory problems, chronic pain, chronic fatigue, and chronic headaches. At the initial hearing before the ALJ, Plaintiff testified that functionally she can stand for about a half an hour, sit for about a half an hour, walk for ten minutes, and lift ten pounds. (Tr. 463-64). Plaintiff testified that it is primarily her depression and agoraphobia that prevent her from working. (Tr. 480).

On April 29, 2005, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. On April 14, 2006, the Appeals Council denied Plaintiff's request for review, adopting the ALJ's decision as the Commissioner's final decision. Having exhausted her administrative remedies, Plaintiff filed the instant suit on May 15, 2006. The matter has culminated in cross motions for summary judgment, which are now ripe for adjudication.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial activity since the alleged onset of disability. (Tr. 26). At Steps 2 and 3, the ALJ found that Plaintiff's cervical and lumbar pain/strain, osteoarthritis, and mood disorder are considered "severe" based on the requirements in 20 CFR § 416.920(c). (*Id.*). However, he found that these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.*).

At Step 4, the ALJ found that Plaintiff possesses the residual functional capacity to perform the following activities: lifting and/or carrying of no more than 50 pounds occasionally and 25 pounds frequently; limited to no more than occasional climbing of ladders, ropes, and scaffolds; and limited to no more than occasional crawling and overhead reaching. (*Id.*). Mentally, she is moderately limited in the ability to maintain attention/concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to interact

appropriately with the general public. However, she does retain the basic mental capacity to acceptably understand/recall simple tasks, complete routine mental aspects of work per a schedule, make simple decisions, tolerate coworkers and supervisors in object focused jobs, and to adapt to gradual, infrequent change. (*Id.*). The Plaintiff had no past relevant work to be considered by the ALJ based upon her RFC.

At Step 5, the ALJ concluded that there are a significant number of jobs in the regional and national economies that Plaintiff could perform, despite her limitations. This conclusion resulted from testimony by a vocational expert, in response to a hypothetical situation assuming an individual of Plaintiff's age, education, past relevant work experience, and residual functional capacity. These jobs included janitor/cleaner or production inspector at the medium level, marker/labeler or grader/sorter at the light level, and marker or hand packer at the sedentary level. (Tr. 25). The ALJ therefore concluded that Plaintiff is not disabled by Social Security standards. (Tr. 27).

**C.   Analysis**

Plaintiff's sole argument on appeal is that the ALJ erred in disregarding the April 26, 2004, form assessment of Plaintiff's physical abilities and limitations authored by Lisa Fleming, a nurse practitioner. (Tr. 437-40). Fleming assessed that Plaintiff could lift and carry eight pounds occasionally and five pounds frequently. (Tr. 437). She indicated that Plaintiff could stand and walk for three hours and sit for three hours in an eight-hour workday. (Tr. 438). She further indicated on this assessment form that Plaintiff could frequently climb and balance, occasionally kneel and crawl, but never stoop or crouch. (Tr. 438). Fleming concluded that Plaintiff's ability to push or pull as well as her exposure to temperature extremes, noise, humidity, and vibrations were limited. (Tr. 439). And she

-4-

opined that Plaintiff's attention and concentration would frequently be interrupted by pain, causing her to take breaks every two hours and miss about two days of work per month. (Tr. 439-40).

In his written decision, the ALJ notes that as a nurse practitioner, Fleming is not considered an acceptable medical source under 20 C.F.R. § 416.913(a) for purposes of establishing Plaintiff's medically determinable impairments. The ALJ therefore rejected the limitations assessed by Fleming. Plaintiff does not dispute that Fleming fails to qualify as an acceptable medical source capable of providing such opinion evidence. Plaintiff nevertheless maintains that the ALJ was not free to completely reject Fleming's assessment, but rather was required to give it at least some weight as "other source" evidence under 20 C.F.R. § 416.913(d).

Even though the ALJ *may* look to evidence from sources other than acceptable medical ones, the ALJ is not required to do so. *See* 20 C.F.R. § 416.913(d). By regulation, only acceptable medical sources can serve as reliable evidence to establish medically determinable impairments. Evidence from other sources, including non-acceptable medical sources such as nurse practitioners, can be used by an ALJ to gauge the severity of impairments and how they affect a claimant's ability to work. But under current regulations, the ALJ is given discretion to determine the appropriate weight that is given to such non-acceptable medical sources. *See Walters v. Comm'r of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997).

Plaintiff offered no functional capacity assessment from a treating, acceptable medical source in support of her claim. But the record does contain assessments from acceptable medical sources offered by the Commissioner.

Plaintiff was psychologically evaluated by Dr. Wayne Ross Edwards on September 14, 2003. (Tr. 325-30). Dr. Edwards diagnosed mood and personality disorders. (Tr. 329). However, he opined that she was capable of performing simple work-related tasks, asking simple questions and for assistance, and appropriately understanding and remembering so as to follow simple commands. (Tr. 329-30). He also concluded that she was capable of working without special supervision, and was able to adapt to changes in a day-to-day work setting without significant impairment. From a mental standpoint, she could work simple job tasks for eight hours per day, five days a week, without psychiatric symptoms. (Tr. 330).

Based upon Dr. Edwards' evaluation and the other record evidence, a mental functional capacity assessment was completed by Edward Ross, Ph.D. on October 1, 2003. (Tr. 346-49). In it, he concluded that Plaintiff was not significantly limited in her ability to remember locations and work-like procedures; to understand and remember very short and simple instructions; to understand and remember detailed instructions; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; and to make simple work-related decisions. (Tr. 346). Further, Ross found Plaintiff only moderately limited in her ability to maintain attention and concentration for extended periods and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (*Id.*). Additionally, he concluded Plaintiff is not significantly limited in her ability to socially interact with others or adapt to changes in the workplace. (Tr. 347). The findings presented in his assessment were affirmed by Ilze A. Sillers, Ph.D. on December 5, 2003. (Tr. 385-88A).

In addition to a mental evaluation, Plaintiff underwent a physical capacity examination by Dr. Stephen Nutter on September 18, 2003. (Tr. 318-24). Based upon the history presented and his clinical evaluation, Dr. Nutter concluded that Plaintiff's ability to bend, walk, sit, lift, carry heavy objects, climb, crawl, and squat would be mildly to moderately limited due to back, neck and joint pain. (Tr. 323).

Based upon Dr. Nutter's report of his physical evaluation, combined with the other record evidence, on October 6, 2003, Dr. Carlos Hernandez completed a residual functional capacity assessment, concluding that Plaintiff can occasionally lift 50 pounds; frequently lift or carry 25 pounds; stand or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and her ability to push or pull is unlimited. (Tr. 351). Further, Dr. Hernandez concluded that Plaintiff can occasionally climb ladders, ropes, scaffolds, and crawl, but she is not limited in her ability to climb ramps or stairs, balance, stoop, kneel, or crouch. (Tr. 352). Plaintiff can also frequently reach overhead, and she has no visual, communicative, or environmental limitations. (Tr. 353-54). These conclusions were reiterated by Dr. Gary Higgason, who performed a consultative record evaluation and completed a functional capacity assessment on December 10, 2003. (Tr. 389-97).

After reviewing the record acceptable medical and other evidence, the ALJ adopted the exertional limitations imposed by Drs. Hernandez and Higgason, and the non-exertional limitations assessed by psychologists Ross and Sillers. The ALJ in this case was entitled to rely upon the opinions of such state agency medical consultants, as pointed out by the Commissioner, and indeed was required to consider the opinions from these acceptable medical sources. The ALJ's written decision sufficiently articulates how the opinions from these sources are supported by the substantial medical and other evidence of record. And

placing determinative weight on these opinions in formulating Plaintiff's RFC was appropriate, given that these assessments were not contradicted by a valid opinion from a treating or examining physician or other acceptable medical source.

Therefore, based on the evidence of record, the ALJ correctly noted that "there is little documentation of treatment over the past two years since the claimant's alleged onset date and the only assessment provided by a treating source is that of a family nurse practitioner. This is not an acceptable medical source and therefore no weight is given this assessment." (Tr. 23). The ALJ did not err in determining that Fleming was not qualified as an acceptable source of medical opinion evidence. *See* 20 C.F.R. § 416.913(a).

To the extent Fleming's assessment was otherwise of use in measuring the severity of Plaintiff's impairments and her ability to work, Fleming's conclusions are lacking in underlying supporting evidence and are contradicted by the reports of the acceptable medical sources. Plaintiff offered only the form assessment of Fleming, without further elaboration or documentation of her clinical exposure to Plaintiff and what role, if any, she played in Plaintiff's care and treatment to support the conclusions set forth in her assessment. An ALJ is not bound by even an acceptable medical source's opinion if it is conclusory and unsupported by objective medical evidence. Simply put, information from "other sources" such as nurse practitioners like Ms. Fleming may be helpful to an ALJ. But the ALJ in this case was not bound by Fleming's opinions nor required to give them any weight where, as here, supporting evidence for such conclusions was absent. In summary, because the ALJ is not required to accept Fleming's findings, and the evidence provided by acceptable medical sources indicates that Plaintiff is not disabled, Plaintiff's argument on appeal is without merit.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #12) be, and hereby is, **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #13) be, and hereby is, **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 25th day of September, 2007.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-06-98-ScottMOO.wpd